JUDGE SULLIVAN



United States District Court
Southern District of New York
-------------------------------------------------X
Roland Ovenseri                       :

       Plaintiff,                  :        Docket No.:

   vs.                                 :

BankUnited (formerly known as Bank    :
United, FSB)                          :        **VERIFIED COMPLAINT**

       Defendant.                  :        Jury Trial Demanded
-------------------------------------------------X

### Nature of the Action

1.  This is an action by a homeowner challenging the Defendant's deceptive and
    predatory lending practices.  Defendant fraudulently induced Mr. Roland
    Ovenseri, a hardworking homeowner, to sign a mortgage for refinancing his
    home in the Bronx through material misrepresentations.  Defendant, through its
    agent(s), forged his signature on an Adjustable Rate Rider to saddle him with an
    8% adjustable rate mortgage to replace his then existing 6.25%, 30 year fixed
    rate mortgage.  The  transaction was conducted in gross violation of the common
    law as well as applicable state and federal laws.  On these and related grounds,
    Mr.  Ovenseri asserts claims under the Truth in Lending Act ("TILA"), 15 U.S.C.
    §1601, *et seq*, The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691 *et
    seq*, New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. L. §349, New
    York's Banking Law, §6-d, and the common law.  He seeks compensatory and
    punitive damages, and equitable and injunctive relief, in addition to attorneys
    fees and expenses.

### PARTIES

2.  Mr. Roland Ovenseri is a resident of the State of New York.  At all relevant times,
    he is and has been the owner of his home at 1312 Hoe Avenue, Bronx, New
    York 10459.

3.  Defendant BankUnited is a federally chartered savings association.  It is the
    successor-in-title to Bank United FSB since May 21, 2009.  Bank United FSB

was a Florida Bank, which was taken over by the FDIC.

## JURISDICTION

4.     The Court has jurisdiction over this matter pursuant to the Truth In Lending Act, 15 U.S.C. §1640, the Equal Credit Opportunity Act, 15 U.S.C. §1691e, and federal question, 28 U.S.C. §1331, 1337.  Supplementary jurisdiction exists over Mr. Ovenseri's state law claims under 28 U.S.C. §1367.

5.     Jurisdiction also exists under the Diversity statute, 28 U.S.C. §1332.  Mr. Ovenseri is a citizen of New York.  Defendant has its principal offices in Florida, and is considered a citizen of Florida for this purpose.  The amount in controversy exceeds $75,000 exclusive of interest and costs.

## STATEMENT OF FACTS

6.     At all relevant times, Mr. Roland Ovenseri owned his home located at 1312 Hoe Avenue, Bronx, New York 10459.  Prior to March 2007, he had a 30 year fixed mortgage at 6.625%.

7.     In late 2006, Mr. Ovenseri received a promotional mailing from Defendant's agent, "Star Financial".  In that mailing, which was specifically addressed to Mr. Ovenseri, Defendant's agent represented that Mr. Ovenseri could combine his then-existing two mortgages at much lower interest rates which would save him $1,880 per month.  Defendant's agent stated:

> You obtained a first and second mortgage.  The original payments were $1,664 and $1,915.  An opportunity still exists to combine both mortgages at a PRE-APPROVED interest rate of 1.95% (5.99% APR) or less.  A new loan enables you to skip a mortgage payment and have no out of pocket closing costs.
> The new mortgage is one consolidated payment based on your equity and your payment history.  In your case, the new combined mortgage payment could be $1,699. . .

Undated letter from Star Financial of Irvine, California (emphasis in original).

8.     A micro-print footnote in that letter, which footnote is barely readable – and violative of New York Law, see CPLR 4544 - represented, inter alia, that (a) the lifetime interest cap was 9.95%; and (b) the "Initial payment" would be "fixed for a maximum of 60 months."  Moreover, the maximum increase in minimum monthly

payments after this "fixed period is 7.5% of minimum payment."

9. In other words, the mailing represented, Mr. Ovenseri's initial payment would $1,699, fixed for 5 years, and thereafter, it could increase no higher than $1,826.43.

10. However, the footnote continued:

> This credit may not be extended if, after responding to this offer, you do not meet the criteria used in the selection process. This credit is subject to a completed application, home value appraisal, verification of income and employment, debt analysis, credit review, and final underwriting approval. Certain credit score restrictions may apply. Rates and term are subject to change without notice. This advertisement does not constitute an offer to enter into an interest rate and/or discount point and/or rate lock agreement.

11. In other words, this footnote effectively negated the promises in the body of the mailing of "PRE-APPROVED" lowered monthly payments of "$1,699." The microprint also sought to effectively negate the "PRE-APPROVED" promises of an interest rate of "1.95% (5.99% APR) or less".

12. As Defendant knew or ought to have known, most consumers would not venture to read - even if they were physically able to do so - the microprint at all. Instead, they would be enticed by the promise of "PRE-APPROVED" credit with a significant lowering of payments. This was deceptive and misleading.

13. Mr. Ovenseri called the number listed in the mailing, and spoke to Defendant's agent Gary Mandel. Defendant's agent made some preliminary inquiries, and falsely represented that Mr. Ovenseri's monthly payment would be $2,178.34. But he did not reveal that this payment would be only interest.

14. Defendant's agent also concealed material facts, such as
   a. The monthly payment on a fully amortized basis, i.e., principal and interest, would be $4,204.97; and
   b. That the loan entailed a prepayment penalty.

15. On December 20, 2006, Defendant's agent sent Mr. Ovenseri the usual "Good Faith Estimate", which reflected that the loan amount would be $520,000, with

interest rate at 2.95%.  This was to be for a "5 YEAR FIXED" Loan Program.

16. On January 21, 2007, Defendant's agent sent a pre-filled standard form "Uniform Residential Loan Application", Fannie Mae Form 1003, which reflected a 30 year mortgage loan with the principal amount of $490,000.  The loan was to carry interest at 1.5%, In the column entitled "amortization type", the box checked was "ARM", with type "COSI."  Mr. Ovenseri signed the application.

17. Thereafter, Defendant sent a package of documents to Mr. Ovenseri.  Mr. Ovenseri signed the mortgage.

18. It appears that, unknown to Mr. Ovenseri, on or about March 30, 2007, Defendant completed the mortgage transaction at some unknown location. From documents on file with the County Clerk's office, it appears that Defendant's agent(s) forged Mr. Ovenseri's signature on an Adjustable Rate Rider, to reflect a mortgage for $521,005.17 with an 8% interest rate for five years, with a monthly change thereafter.  Further, the note carried a prepayment penalty of six months' interest if Mr. Ovenseri sought to refinance or pay it off within three years.

19. Subsequently, Defendant sent Mr. Ovenseri a package of documents purporting to be the closing documents.  That package contained various mortgage closing documents, including multiple Settlement Statements, Affidavit - Refinance Transaction, Arbitration Agreement, Identity Affidavit, Limited Power of Attorney for Correcting Typographical Errors, Owner's Affidavit, Acknowledgment of Rescission Notice, Closing Notice to Borrower, Acknowledgment and Receipt of Settlement Statement, Statement of Buyer Concerning Title Insurance Policy, Receipt of Privacy Policy, Liability for Shortages, Payoff Letter, Survey Affidavit, Revolving Line of Credit Payoff Letter, Line of Credit Payoff Affidavit, Acknowledgment (Notarized Verification), and Terms and Conditions of Escrow. None of these documents were signed, and most were undated.

20.    That package also contained an instruction memo stating (emphasis in original):

> **ATTN: CLOSING AGENT**
>
> **THESE ARE BROKER DOCS.  PLEASE HAVE SIGNED BUT <u>DO NOT</u> DATE THE ATTACHED DOCS.**
>
> **ATTN: POST CLOSING**
>
> **PLEASE DO NOT SEND THE DOCS. BACK TO THE LENDER.**

21.    This instruction memo was followed by several other documents in the same package, including Uniform Residential Loan Application (2 copies, with initials "BD"), Settlement Statement, Addendum to Note (Prepayment Penalty), Adjustable Rate Note, Family Rider, Mortgage, Adjustable Rate Rider, First Payment Letter, Signature/Name Affidavit, Notice of Right to Cancel (2), Acknowledgment of Waiver of Escrow Account, Flood Hazard Notice, W-9, Occupancy Affidavit and Employment Certification, Borrower's Certification and Authorization, Certification of Mailing Address, Compliance Agreement, Certifications, Disclosures and Notices, credit report disclosure acknowledgment, Prepayment Penalty Disclosure, Patriot Act notices, Notice Regarding 5-year Select Monthly ARM, Loan Program Disclosure for the 5-year Select Monthly ARM, Agreement for Pre-Authorized Transfer, Property Tax Information and Authorization, Notice of Right to Cancel (General), TILA Disclosure Statement, Amortization schedule, Servicing Disclosure Statement, Disclosure of Right to Receive a Copy of an Appraisal, Notice of Right to Cancel, Good Faith Estimate (2 copies), and Notice of Financial Privacy Rights.  <u>Except for one copy of the Notice of Right to Cancel, none of these documents were signed or dated.</u>

22.    Mr. Ovenseri then started receiving a mortgage statement monthly, which contained three payment options: principal and interest ($4,116.25), interest only ($3,674.77), and minimum payment ($2,178.34).  The "interest only" payment was higher than Mr. Ovenseri's fully amortized payments under his earlier 30-year fixed mortgage.  He called Defendant repeatedly over the phone, and left messages, but Defendant never returned his call.

23.   Mr. Ovenseri made the minimum payments, waiting to hear from Defendant. Mr. Ovenseri also wrote to Defendant repeatedly, but once again, never received a response. Meanwhile, Mr. Ovenseri's mortgage balance has been increasing due to negative amortization every month.

24.   As a result of Defendant's fraud, Mr. Ovenseri was saddled with a huge mortgage at very unattractive terms relative to his then existing fixed rate 30 year mortgage at 6.25%. Further, the outstanding principal balance has been increasing every month.

25.   As a result of Defendant's aforesaid fraudulent conduct, Mr. Ovenseri has sustained significant damages, including without limitation, increase in principal amount due to negative amortization, transaction costs of the mortgage, excessive interest payments, aggravation, emotional distress, mental anguish, anxiety, loss of enjoyment of life, punitive damages; and all other damages he would be entitled to under the law.[1]

COUNT I

(Violations of the Truth in Lending Act)

26.   Mr. Ovenseri repeats, realleges and incorporates by reference the allegations above as if fully set forth herein.

27.   At all relevant times, Defendant was engaged in the business of consumer lending and regularly extended credit to consumers in exchange for an installment agreement incurring finance charges repayable in more than four installments. Defendant is therefore a "creditor" within the meaning of the Truth in Lending Act and Regulation Z.

28.   Defendant violated the Truth in Lending Act and Regulation Z by failing to deliver all "material" disclosures required by the Truth in Lending Act and Regulation Z clearly and conspicuously, including the following:

---

[1]While Mr. Ovenseri asserted some of the claims herein in an adversary proceeding in bankruptcy, those proceedings were dismissed without prejudice on July 9, 2008.

a.    failing to give the rescission notice at the time Mr. Ovenseri's payment obligation began, in violation of 15 U.S.C. §1635(a);

b.    failing to give two copies of the rescission notice to Mr. Ovenseri at closing, in violation of 15 U.S.C. §1635(a) and Regulation Z, 12 C.F.R. §226.23(b)(1);

c.    failing to clearly and conspicuously make all material disclosures, in violation of 15 U.S.C. §I638, and Regulation Z, I2 C.F.R. §226.17;

d.    Failing to disclose accurately the "finance charge," in violation of 15 U.S.C. §1638(a)(3), and Regulation Z, 12 C.F.R. § 226 18(d) and 226.4;

e.    failing to disclose accurately the "amount financed" in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R § 226 18(b); and

f.    filing to disclose accurately the "payment schedule," in violation of 15 U S C §1638(a)(6) and Regulation Z, 12 C.F.R. § 226 18(g).

29.    The transaction purported to contain a security interest in Mr. Ovenseri's principal dwelling.  Accordingly, it was subject to the rescission requirements of 15 U.S.C. §1635 and Regulation Z, 12 C.F.R.§226.I5.

30.    Mr. Ovenseri has a continuing right to rescind the contract until the third business day after he receives a notice in compliance with 15 U.S.C. §1635(a) and Regulation Z, 12 C.F R. §226.15(b).  Mr. Ovenseri never received any of the material disclosures mandated by TILA.

31.    Following proper notice of cancellation by Mr. Ovenseri, Defendant's refusal to terminate the security interest violated 15 U.S.C §1635(b) and Regulation Z, 12 C.F.R. §226.15(d).

32.    Defendant's practice complained of is intended to interfere with, does interfere with and/or renders null Mr. Ovenseri's right to cancel.  Accordingly, Mr. Ovenseri's right to cancel continues pursuant to 15 U.S.C. §1635(f).

33.    As a result of the Defendant's practices outlined above, Mr. Ovenseri has been damaged in an amount in excess of $600,000.00

## COUNT II

(Deceptive Business Practices - Section 349, N.Y.G.B.L.)

34.  This count is asserted without prejudice to any of the aforesaid counts.

35.  Mr. Ovenseri repeats and realleges each and every allegation above and incorporates same herein.

36.  Defendant committed and/or engaged in one or more of the following acts or conduct and/or made the following misrepresentations:

  a.  Inducing Mr. Ovenseri, with false representations, to sign certain documents;

  b.  Misrepresenting to Mr. Ovenseri that the signatures were sought for a "bridge loan";

  c.  Forging and/or Transposing Mr. Ovenseri's signatures onto mortgage related documents to manufacture a "closing" and asserting false claims of mortgage;

  d.  Failing to timely and validly make all material disclosures under federal law; and

  e.  Imposing exorbitant "closing costs" on Mr. Ovenseri without ever informing him of the same.

37.  All of the above misrepresentations, acts and/or conduct by Defendant involved material elements of the transaction between the parties and were unfair, illegal, false, deceptive and/or misleading.

38.  Additionally, such representations were likely to, and in fact did, harm, deceive or mislead Mr. Ovenseri who was acting reasonably.

39.  The conduct and actions described herein are directed at the general public and have a broad impact on consumers at large and are not isolated or unique to this transaction between the parties.

40.  The aforementioned conduct constitutes deceptive business practices, in violation of General Business Law, Art. 22-A, §349. As a result of the Defendant's breach, Mr. Ovenseri has sustained damages which he is entitled to

recover from Defendants.

41.   Mr. Ovenseri is entitled to recover costs and attorney's fees from the Defendant pursuant to NYGBL §349(h) and New York General Obligations Law §5-327.

COUNT III

(Deceptive Business Practices - Section 349, N.Y.G.B.L. - Injunction)

42.   This count is asserted without prejudice to any of the aforesaid counts.

43.   Mr. Ovenseri repeats and realleges each and every allegation above and incorporates the same herein.

44.   Pursuant to GBL §349(h), Mr. Ovenseri is entitled to an injunction barring Defendant from:

    a.   Inducing consumers with false representations, to sign mortgage documents;

    b.   Forging and/or transposing consumers' signatures onto mortgage related documents to manufacture a "closing" and asserting false claims of mortgage;

    c.   Failing to timely and validly make all material disclosures under federal law; and

    d.   Imposing exorbitant "closing costs" on consumers without ever informing such consumer of the same.

45.   In addition to damages, Mr. Ovenseri is entitled to recover costs and attorney's fees from the Defendant pursuant to GBL §349(h) and GOL §5-327.

COUNT IV

(Violations of The Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq)

46.   This count is asserted without prejudice to any of the aforesaid counts.

47.   Mr. Ovenseri repeats, realleges and incorporates by reference the allegations above as if fully set forth herein

48.   Defendant discriminated against Mr. Ovenseri on the basis of race, color, religion, and/or national origin, involving the instant transaction by:

    a.   Not even providing an application process for Mr. Ovenseri, and providing

disparate levels of assistance in the application process;

b.   Misrepresenting material facts about the closing costs of the transaction;

c.   Misrepresenting material facts about the interest rate which would be charged on the transaction;

d.   Forging and/or transposing signatures onto mortgage-related documents;

e.   Denying Mr. Ovenseri the mortgage that he actually applied for;

f.   Failing to issue the requisite adverse action notice.

49.   Defendant's discriminatory actions proximately caused Mr. Ovenseri to suffer compensatory damages in the form of economic losses, humiliation, embarrassment, mental anguish, inconvenience, loss of enjoyment of life, and deprivation of civil rights.

50.   The actions of Defendant were intentional and wilful, and warrant the imposition of punitive damages.

51.   By virtue of the foregoing, Defendant violated the Equal Credit Opportunity Act, 15 U.S.C. §§1691-1691f.

## COUNT V

(Violations of The Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq)

52.   This count is asserted without prejudice to any of the aforesaid counts.

53.   Mr. Ovenseri repeats, realleges and incorporates by reference the allegations above as if fully set forth herein.

54.   Defendant never provided the settlement statements and other disclosure notices required by the Real Estate Settlement Procedures Act.

55.   Thereby, Defendant violated the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq, and Mr. Ovenseri is entitled to damages.

## Count VI

(Fraud)

56.   This count is asserted without prejudice to any of the aforesaid counts.

57.   Mr. Ovenseri incorporates the contents of the paragraphs hereinabove.

58.   Defendant conducted a fraudulent scheme to entrap Mr. Ovenseri in a highly

unfavorable mortgage transaction with undisclosed costs. It wilfully and knowingly made, or caused to be made, affirmative misrepresentations of material facts in furtherance of this scheme. It also wilfully and knowingly concealed material facts from Mr. Ovenseri, never held a proper closing, forged his signature on the mortgage note, and failed to give Mr. Ovenseri a copy of the settlement documents. Defendant knew the falsity of the misrepresentations at the time these misrepresentations were made. Defendant also knew the material nature of the facts that it willfully concealed from Mr. Ovenseri, and that Defendant ought to have disclosed these facts at that time to him. Defendant had superior knowledge not available to Mr. Ovenseri; as such, it had the duty to disclose the facts. Mr. Ovenseri relied upon Defendant'ss representations, and was unaware of the falsity or misleading nature of the representations. Mr. Ovenseri's reliance was reasonable under the circumstances. As a result of such reliance, Mr. Ovenseri sustained damages.

59.   By engaging in the conduct described above, Defendant committed a fraud upon Mr. Ovenseri.

60.   Moreover, Defendant's wanton conduct was systematic, in reckless disregard of their statutory and other duties, tantamount to criminal indifference to civil obligations, and unconscionable.

61.   Defendant is therefore liable to pay Mr. Ovenseri compensatory and punitive damages in such amount as may be proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate. In addition, Mr. Ovenseri is also entitled to the equitable remedies of rescission, and injunctive and declaratory reliefs.

## Count VII

### (Negligent Misrepresentation)

62.   This count is asserted without prejudice to any of the aforesaid counts.

63.   Mr. Ovenseri incorporates the contents of the paragraphs hereinabove.

64.   Defendant made or caused to be made, affirmative misrepresentations of material facts in furtherance of this scheme.  It also concealed material facts from Mr. Ovenseri and failed to give him a copy of the transaction documents. Defendant ought to have known the falsity of the misrepresentations, and/or the materiality of the concealed facts.  Defendant had superior knowledge not available to Mr. Ovenseri; as such, it had the duty to disclose the facts.  Further, the parties had a special relationship which gave rise to a duty on the part of Defendant to use reasonable care to impart correct information to Mr. Ovenseri. Mr. Ovenseri relied upon Defendant's representations, and was unaware of the falsity or misleading nature of the representations.  Mr. Ovenseri's reliance was reasonable under the circumstances.  As a result of such reliance, Mr. Ovenseri sustained damages.

65.   By engaging in the conduct described above, Defendant committed the tort of negligent misrepresentation upon Mr. Ovenseri.

66.   Defendant is therefore liable to pay Mr. Ovenseri damages in such amount as may be proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate.  In addition, Mr. Ovenseri is also entitled to the equitable remedies of rescission, and injunctive and declaratory reliefs.

## COUNT VIII

### (Violations of N.Y. Banking Law)

67.   This count is asserted without prejudice to any of the aforesaid counts.

68.   Mr. Ovenseri repeats, realleges and incorporates by reference the allegations above as if fully set forth herein

69.   Defendant denied an application for a mortgage loan secured by real property located within New York as sought by Mr.  Ovenseri, or alternatively, made such

a loan conditional upon Mr. Ovenseri's agreement to terms substantially different than those he sought. Nevertheless, Defendant failed and neglected to notify, in writing, Mr. Ovenseri of the reasons for the denial of the loan on the terms he sought.

70. Defendant's failure/refusal was a violation of New York Banking Law. N.Y. Banking Law §6-d.

71. As a result, Mr. Ovenseri suffered injury, including without limitation compensatory damages in the form of economic losses, humiliation, embarrassment, mental anguish, inconvenience, and loss of enjoyment of life.

72. The actions of Defendant were intentional and wilful, and warrant the imposition of punitive damages.

73. By virtue of the foregoing, Defendant violated the New York Banking Law, Section 6d.

74. Defendant is therefore liable to pay Mr. Ovenseri compensatory damages in such amount as may be proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate. In addition, Mr. Ovenseri is also entitled to the equitable remedies of rescission, and injunctive and declaratory reliefs.

## Count IX

### (Breach of Contract)

75. This count is asserted without prejudice to any of the aforesaid counts.

76. Mr. Ovenseri incorporates the contents of the paragraphs hereinabove.

77. Defendant promised a refinancing mortgage at 1.95%, but instead, misled him into signing a mortgage transaction at 8%.

78. Further, Defendant charged sums towards fees and expenses which were considerably in excess of those promised to Mr. Ovenseri and imposed significant undisclosed amounts towards alleged fees and other charges.

79. Thereby, Defendant breached its contract with Mr. Ovenseri. As a result of such breach, Mr. Ovenseri sustained damages.

80.   Defendant is therefore liable to pay Mr. Ovenseri compensatory damages in such amount as may be proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate.  In addition, Mr. Ovenseri is also entitled to the equitable remedies of rescission, and injunctive and declaratory reliefs.

Count X

(Breach of Implied Covenant of Good Faith and Fair Dealing)

81.   Mr. Ovenseri incorporates the contents of the paragraphs hereinabove.

82.   By its conduct aforesaid, Defendant breached the implied covenant of good faith and fair dealing.  As a result of such breach, Mr. Ovenseri sustained damages.

83.   Defendant is therefore liable to pay Mr. Ovenseri compensatory damages in such amount as may be proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate.  In addition, Mr. Ovenseri is also entitled to the equitable remedies of rescission, and injunctive and declaratory reliefs.

WHEREFORE, Mr. Ovenseri respectfully requests that this Court:

a.   Declare that the purported mortgage transaction of March 30, 2007, and all documents connected therewith, including the alleged Adjustable Rate Rider and promissory note, and the Mortgage Deed, are sham, null and void and of no effect in law, or alternatively, that Mr. Ovenseri is entitled to, and has, properly rescinded the alleged mortgage pursuant to 15 U S C. §1635 and that Defendant's security interest in the property is released;

b.   Award compensatory, treble, punitive, and/or statutory damages, including costs and reasonable attorney's fees to Mr. Ovenseri against Defendants, jointly and severally; and

c.      Award such other relief as the Court deems appropriate.

Dated:       New York, New York          **Chittur & Associates, P.C.**
             May 17, 2010

                                         By:  Krishnan Chittur, Esq. (KC9258)
                                         286 Madison Avenue Suite 1100
                                         New York, New York 10017
                                         Tel: (212) 370-0447
                                         Email: kchittur@chittur.com

                                         Attorneys for Plaintiff Roland Ovenseri

<u>Verification</u>

Under 28 U.S.C. §1746, I declare under penalties of perjury that the factual contents of the aforesaid Verified Complaint are true to my own knowledge and belief.

Dated this   day of May, 2010

Roland Ovenseri

Chittur & Associates, P.C.
New York, NY 10017

Verified Complaint
Page 16 of 16